# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEFF GULAKOWSKI ) | |
| 1006 Ice Castle Court ) | |
| Gambrills, MD. 21054 ) | |
|     Plaintiff, ) | Civil Action No. |
| ) | |
| v. ) | |
| ) | Jury Trial Demanded |
| Matthew G. Whitaker, ) | |
| Acting Attorney General, ) | |
| U.S. Dept. of Justice ) | |
|     Defendant. ) | |
| ) | |

## COMPLAINT

Plaintiff, Jeff Gulakowski, by and through his undersigned counsel, complains of the Defendant as follows:

## INTRODUCTION

1. Jeff Gulakowski, a long-time employee of the Federal Bureau of Investigation (FBI), developed a mental disability and requested reasonable accommodations. Instead of accommodating Mr. Gulakowski, the agency demoted him, placed him on a disciplinary procedure, failed to promote him in accordance with the terms of his career ladder position and changed his job duties to primarily maintenance duties.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction because more than 180 days have passed since Plaintiff filed his formal EEO complaints of discrimination. Venue is proper because the unlawful employment practices were committed in this judicial district, the relevant employment records are maintained and administered in this judicial district and the

Defendant's principal offices are located in this judicial district.

## PARTIES

3. Plaintiff Jeff Gulakowski is a resident of Gambrills, Maryland.

4. On information and belief, Defendant, Matthew G. Whitaker, Acting Attorney General, Department of Justice, is named in his official capacity as Acting Attorney General of the Agency that employed Plaintiff within the U.S. Government.

## FACTS

5. This action is filed under § 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 et seq. ("the Rehabilitation Act") and alleges that the defendant discriminated against the Plaintiff on the basis of his disabilities, its record of his disabilities, and its perception of him as if he were disabled, by discriminating against him and subjecting him to a hostile work environment and by denying him reasonable accommodations.

6. Plaintiff is also alleging discrimination-based retaliation for initiating an EEO complaint against the agency and requesting reasonable accommodations.

7. This action is also filed under the Family and Medical Leave Act (FMLA) and alleges that Defendant interfered with his FMLA rights and retaliated against him for taking FMLA protected leave.

### Background

8. Mr. Gulakowski has been employed by the Federal Bureau of Investigation (FBI) since in or around 1987 when he started working in a professional support position. In or around August 1995, he became a Management and Program Analyst (MAPA). He was promoted to GS-14 in or around 2006.

9. In or around January 2010, Mr. Gulakowski was assigned to his current working group in a Division at FBI Headquarters. In June 2016, Mr. Gulakowski's entire unit was transferred to the Critical Incident Response Group (CIRG).

10. As a MAPA in his current working group, Mr. Gulakowski is responsible for daily management of a training facility.

11. Senior Management and Program Analyst (SMAPA) N. Bradley Boles became Mr. Gulakowski's first line supervisor and reviewing official in or about early 2011.

12. Unit Chief (UC) Alfred M. Parrell became Mr. Gulakowski's second line supervisor in 2010.

### Mr. Gulakowski begins to suffer from depression and anxiety and advises his supervisors.

13. In or about September 2012, Mr. Gulakowski went through a difficult divorce and he became the primary caregiver for a close friend who had suffered a severe stroke. In addition, a close family member was suffering from anxiety and depression.

14. Because of these events, Mr. Gulakowski began to suffer from major depressive disorder and severe anxiety.

15. In or around March 2012, Mr. Gulakowski began seeing an Employee Assistance Program counselor and a psychiatrist. The psychiatrist diagnosed him with severe depression and anxiety.

16. Mr. Gulakowski is a disabled person within the meaning of the Rehabilitation Act and the Americans with Disabilities Act because he suffers from a mental impairment (severe depression and anxiety) and these conditions substantially limit his major life activities including sleeping, concentrating and communicating.

17. Mr. Gulakowski told SMAPA Boles and UC Parrell about his EAP meetings and his family situation in 2012.

18. In or around April 2014, Mr. Gulakowski requested intermittent leave under the Family and Medical Leave Act (FMLA) to handle his close family member's depression and anxiety. His leave was approved on or about April 28, 2014. Mr. Gulakowski has been granted intermittent FMLA leave in 2014, 2015, 2016, 2017 and 2018.

**Mr. Gulakowski's performance ratings are lowered and he is placed on a PIP.**

19. Mr. Gulakowski's performance was rated "Excellent" in 2012 and 2013 and "Successful" in October 2014. He also received numerous performance awards for work performed from 2010 to 2014.

20. In October 2015, Mr. Gulakowski received a rating of "Minimally Successful" because he was unable to complete an assignment in a timely fashion. Mr. Gulakowski disagreed with the rating.

21. Around this time, SMAPA Boles told Mr. Gulakowski that he needed to leave his issues "at home, outside the door, and when you walk in you have to give one-hundred percent." SMAPA Boles also told Mr. Gulakowski "I want you back where you were when you were performing in the past." Mr. Gulakowski believed SMAPA Boles meant that he wanted Mr. Gulakowski the way he was prior to developing severe depression and anxiety and he believed these statements were demeaning.

22. In November 2015, SMAPA Boles placed Mr. Gulakowski on a performance improvement plan (PIP). Mr. Gulakowski successfully completed the PIP in February 2016.

### Mr. Gulakowski requests accommodations.

23. Although Mr. Gulakowski was successfully performing his duties, he was having severe medical issues.  In or around May 2016, Mr. Gulakowski asked UC Parrell if he could work at home one day per week to attend a medical appointment.  UC Parrell denied the request telling Mr. Gulakowski that he should have saved his leave.

24. In or around August 30, 2016, Mr. Gulakowski formally requested a reasonable accommodation.  He requested extra time to work on projects and the ability to telework one day per week to accommodate his medical conditions.  On October 27, 2016, the agency's Office of Equal Employment Opportunity Affairs recommended that the request be denied and SMAPA Boles denied the request. Mr. Gulakowski was treated differently from his coworkers who were given extra time to complete projects and were allowed to telework.  In addition, Mr. Gulakowski was previously permitted to telework from 2010 to 2012.  He had the same job duties and responsibilities during that time period as he had in 2016 when he was denied accommodations.

### Mr. Gulakowski is demoted from GS-14 Step 8 to GS 12 Step 10.

25. In or about July 2016, UC Parrell assigned Mr. Gulakowski to complete a write-up of an on-site review.   He gave Mr. Gulakowski a one-week deadline.

26. The one-week deadline was unreasonable.  First, deadlines were not given for write-ups because these assignments typically take eight or more months to complete.  Second, this assignment had previously been assigned to another worker in the unit.  Therefore, Mr. Gulakowski had to catch up on what had occurred.  Third, Mr. Gulakowski had to speak to numerous people and review extensive data.  Mr. Gulakowski submitted a rough draft of the assignment on the requested deadline—July 14, 2016.

27. Mr. Gulakowski explained to his supervisors why he could only submit a rough draft on the requested deadline and the deadline was extended. He finished the write-up on October 10, 2016. Even though Mr. Gulakowski needed an additional three months to complete the assignment, he took far less time than his coworkers who averaged eight months or more to complete write-ups.

28. Other than the write-up assigned in July 2016, Mr. Gulakowski was unaware of any issues with his performance and believed he was performing at an acceptable level.

29. Mr. Gulakowski did not receive a performance appraisal rating (PAR) in October 2016.

30. On or about December 22, 2016, SMAPA Boles and UC Parrell told Mr. Gulakowski that they had submitted an electronic communication to Human Resources and Human Resources "would make a decision."

31. On or about January 27, 2017, Mr. Gulakowski received a call from a retired Supervisor who informed him that several of his coworkers had told her that he was going to be demoted. Mr. Gulakowski called SMAPA Boles asking why he got a call saying he was going to be demoted. SMAPA Boles responded that he did not know anything about this.

32. On January 27, 2017, UC Parrell admitted in an email that he had told SSA Karl Schumann that he was pursuing administrative action against Mr. Gulakowski and a possible demotion.

33. On or about January 30, 2017, Deputy Assistant Director (DAD) Edward Reinhold gave Mr. Gulakowski a letter stating that he was being demoted to GS-12 Step 1. The letter did not explain why he was being demoted nor did it provide a date for the demotion.

34. On or about January 31, 2017, UC Parrell questioned Mr. Gulakowski about his

conversation with SMAPA Boles on January 27, 2017.  Mr. Gulakowski's conversation with SMAPA Boles was private and should not have been disclosed to UC Parrell.

35. On or about March 31, 2017, Mr. Gulakowski learned from co-worker Sherri Batterman that numerous people who had attended a work conference in March 2017 were discussing his demotion.

36. On or about April 5, 2017, co-worker Tammy K. Sellers told Mr. Gulakowski that in March 2016, UC Parrell told her that he was planning to demote Mr. Gulakowski. This conversation occurred six months before the yearly performance appraisal period ended and prior to the write up assigned in July 2016 suggesting that UC Parrell had decided to demote Mr. Gulakowski for reasons other than his performance.

37. On or about May 11, 2017, Mr. Gulakowski was officially demoted from GS-14 step 8 to GS-12 step 10.

### Mr. Gulakowski again requests reasonable accommodations.

38. In or about June 2017, SMAPA Boles talked to Mr. Gulakowski about his performance and asked how he could help him.  Mr. Gulakowski told SMAPA Boles that he wanted to telework and be given extra time to complete projects as per his request for reasonable accommodations in August 2016.

39. SMAPA Boles could not explain why other employees were given extra time to complete their projects and could telework. SMAPA Boles was also not able to explain how he could supervise Mr. Gulakowski when he worked 50 miles away.

### UC Parrell intimidates Mr. Gulakowski and his witness.

40. In or around July 2017, Mr. Gulakowski was assigned an on-site review for the FBI and he was in charge of coordinating the interviews and logistics for the job.  Ms. Sellers was

7

one of the people scheduled to be interviewed.

41. When Ms. Sellers had to reschedule her interview with UC Parrell due to a conflicting work matter, UC Parrell became very upset and told Mr. Gulakowski, "I know why Sellers is avoiding me. All you are doing is hurting the program." Mr. Gulakowski believed that UC Parrell was referring to Mr. Gulakowski's EEO complaints when he made these remarks.

42. When UC Parrell met with Ms. Sellers, he intimidated her for participating as a witness in Mr. Gulakowski's EEO complaint. He told her that she was "disrespecting" UC Parrell and the program.

### Mr. Gulakowski is transferred to Virginia.

43. Mr. Gulakowski worked at the FBI headquarters office since August 1995.

44. On or about July 24, 2017, Section Chief (SC) Scott Brunner told Mr. Gulakowski that he believed Mr. Gulakowski needed some time away from UC Parrell and asked Mr. Gulakowski if he would consider going to an FBI location in Virginia for a while.

45. The FBI location in Virginia is 67 miles away from Mr. Gulakowski's home in Gambrills, MD.

46. Following medical testing, Mr. Gulakowski's doctor recommended that Mr. Gulakowski not work at the Virginia location because of the long commute. Mr. Gulakowski's physician recommended that Mr. Gulakowski not drive more than 20 miles or have longer than a one-hour commute.

47. On or about August 23, 2017, Mr. Gulakowski learned that he was to be permanently reassigned to work at the FBI location in Virginia.

48. In or about August 2017, Mr. Gulakowski relayed his doctor's concerns to SMAPA Boles. SMAPA Boles told Mr. Gulakowski that if he did not want to work in Virginia, he had

to use LWOP or make a new formal request for reasonable accommodations.

49. On or about August 24, 2017, Mr. Gulakowski submitted a formal request for reasonable accommodations. He requested to continue to work at FBI Headquarters. On or about August 28, 2017, Mr. Gulakowski supplemented his request for accommodations to include additional time to work on projects.

50. On or about August 31, 2018, the agency agreed to allow Mr. Gulakowski to continue to work at FBI Headquarters pending the decision on his accommodation request.

51. On or about November 2, 2017, Mr. Gulakowski amended his accommodation request to include teleworking one to two days per week.

52. Because he feared that the agency would make him work in Virginia in violation of his doctor's restrictions, Mr. Gulakowski located a temporary duty assignment (TDY) at the agency's office in Maryland. Mr. Gulakowski worked at the Maryland location from December 4, 2017 to March 2, 2018 when the TDY ended.

53. On or about March 5, 2018, Mr. Gulakowski again requested reasonable accommodations to work at FBI Headquarters until his doctor gave him permission to work at the Virginia office. This request was denied and Mr. Gulakowski began reporting to the Virginia office on March 5, 2018. Although Mr. Gulakowski's entire unit was transferred to the Virginia office, only Mr. Gulakowski was required to report on March 5, 2018. The rest of the unit transferred during the first week of April.

54. On or about March 12, 2018, Mr. Gulakowski's doctor lifted the restrictions on commuting to the Virginia office. Therefore, Mr. Gulakowski withdrew his request to work at FBI Headquarters.

### Mr. Gulakowski is placed on a disciplinary procedure.

55.     On or about November 16, 2017, UC Parrell unfairly penalized Mr. Gulakowski for failing to obtain prior approval or submit a leave request prior to departing early due to an emergency involving a close family member.  Since November 16, 2017, UC Parrell has required Mr. Gulakowski to email his supervisors every day at the time of his arrival and just before his departure.  Mr. Gulakowski's coworkers have taken leave without prior approval and were not placed on a disciplinary procedure.

56.     After placing Mr. Gulakowski on this disciplinary procedure UC Parrell continued to send harassing emails to Mr. Gulakowski about leaving without obtaining approval even though UC Parrell was aware that Mr. Gulakowski left only twice in 30 years without obtaining approval and that both times were due to emergency situations.  Moreover, UC Parrell was aware of Mr. Gulakowski's close family member's medical issues.

### Mr. Gulakowski is forced to cancel a doctor's appointment.

57.     On or about December 17, 2017, Mr. Gulakowski requested leave from two supervisors in the office, SMAPA Betance and SMAPA Boles.  Neither responded to his request even though they were online and in the office that day.  As a result, Mr. Gulakowski had to cancel a medical appointment

### Mr. Gulakowski fails to receive a career ladder promotion.

58.     Since Mr. Gulakowski was demoted to a GS-12 on May 14, 2017, he was eligible for a career ladder promotion on May 14, 2018.  Although Mr. Gulakowski's performance merited a promotion, he has been denied a promotion to GS-13.  Mr. Gulakowski raised this matter in September 2018 with senior management and included work products showing work performed at the GS-13 level.   Acting Section Chief SSA Peter J. Jurack, responded that Mr.

Gulakowski's request for promotion would be "taken under advisement" but no action has been taken by the agency to promote Mr. Gulakowski.

### Mr. Gulakowski's requests for reasonable accommodation are denied.

59. On or about June 22, 2018, the agency issued a decision denying Mr. Gulakowski's reasonable accommodations requests to telework one to two days per week and for extra time to work on projects and assignments.

60. The agency continues to deny Mr. Gulakowski's request for additional time to work on projects and assignments and the ability to telework one to two days per week as a reasonable accommodation for his disability claiming undue hardship even though the agency provides nondisabled employees additional time to work on projects and allows nondisabled employees to telework.

### Mr. Gulakowski's job duties are changed.

61. After transferring to the Virginia office, Mr. Gulakowski has been required to perform mostly maintenance duties such as changing light bulbs. About ninety-five percent of Mr. Gulakowski's job duties are maintenance duties. Previously, Mr. Gulakowski did not perform any maintenance duties. In or around November 2018, Mr. Gulakowski became aware that this was a permanent change to his job duties even though his position description did not change when he transferred to the Virginia office.

*   *   *

62. Mr. Gulakowski has sustained damages as a result of Defendant's unlawful conduct consisting of lost wages, lost benefits, emotional distress, pain and suffering, mental anguish and liquidated damages.

63. Defendant acted with malice, in bad faith, and in reckless disregard of Mr. Gulakowski's federally protected civil rights.

## COUNT 1

(Failure to Provide Reasonable Accommodations—Rehabilitation Act)

64. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-63.

65. By and through its conduct, Defendant violated the Rehabilitation Act by denying Mr. Gulakowski reasonable accommodations for his disabilities.

## COUNT 2

(Disability Discrimination—Rehabilitation Act)

66. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-65.

67. By and through its conduct, Defendant discriminated against Mr. Gulakowski and subjected him to a hostile work environment in violation of the Rehabilitation Act because of his disabilities, its perception of him as disabled, and its record of his disabilities.

## COUNT 3

(Disability discrimination—Rehabilitation Act)

68. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-67.

69. By and through its conduct, Defendant discriminated against Plaintiff and subjected him to a hostile work environment in reprisal for requesting accommodations and filing an EEO complaint in violation of the Rehabilitation Act.

## COUNT 4

(FMLA interference)

70. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-69.

71. Defendant interfered with Plaintiff's FMLA rights when it demoted him while he was

receiving FMLA intermittent leave.

72. As a result, Plaintiff suffered loss of wages, employment benefits, and other compensation (hereinafter, collectively, "lost pay") in an amount to be determined at trial.

73. Plaintiff is entitled to the interest on the amount of his lost pay at the prevailing rate.

74. Defendant's actions were willful, not in good faith, and Defendant did not have reasonable grounds for believing its actions did not violate the FMLA. As such, Plaintiff is entitled to an additional amount as liquidated damages equal to the sum of the lost pay and interest previously described.

75. Defendant's interference with Plaintiff's FMLA rights also entitles Plaintiff to an award of reasonable attorneys' fees and costs.

## **COUNT 5**

(FMLA retaliation)

76. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-75.

77. Defendant demoted Plaintiff in retaliation for taking FMLA protected leave.

78. As a result, Plaintiff suffered loss of wages, employment benefits, and other compensation (hereinafter, collectively, "lost pay") in an amount to be determined at trial.

79. Plaintiff is entitled to the interest on the amount of his lost pay at the prevailing rate.

80. Defendant's actions were willful, not in good faith, and Defendant did not have reasonable grounds for believing its actions did not violate the FMLA. As such, Plaintiff is entitled to an additional amount as liquidated damages equal to the sum of the lost pay and interest previously described.

81. Defendant's retaliation against Plaintiff also entitles Plaintiff to an award of his reasonable attorneys' fees and costs.

**JURY DEMAND**

Plaintiff demands a trial by jury on each count in this Complaint.

**WHEREFORE**, Plaintiff requests that this Court enter judgment against Defendant on all Counts, and award the following:

a. **On Counts 1, 2 and 3**, a promotion to GS 14, step 8 and damages consisting of lost pay and benefits; compensatory damages for pain and suffering, emotional distress, mental anguish, embarrassment, humiliation, and indignity; punitive damages; plus an amount equal to the tax on any award, costs, and attorneys' fees;

b. **On Counts 4 and 5**, a promotion to GS 14, step 8 and damages consisting of lost pay and benefits; an amount equal to Plaintiff's lost pay and benefits as liquidated damages; plus an amount equal to the tax on any award, costs, and attorneys' fees; and

c. any such other relief as the Court deems just and proper.


Date:   January 7, 2019                     Alan Lescht & Associates, P.C.

                                                                  ___/s/Susan L. Kruger_____
Susan L. Kruger, DC Bar # 414566
1825 K Street, N.W., Suite 750
Washington, DC. 20006
Tel.  202-463-6036
Fax  202-463-6067
susan.kruger@leschtlaw.com

*Attorneys for Plaintiff*