# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JEFF GULAKOWSKI,

      **Plaintiff,**

      **v.**                                  **Civil Action No. 19-32 (JEB)**

WILLIAM P. BARR, Attorney General,
U.S. Department of Justice,

      **Defendant.**

## MEMORANDUM OPINION

Plaintiff Jeff Gulakowski, a longtime employee of the Federal Bureau of Investigation, brings this suit alleging violations of the Rehabilitation Act, 29 U.S.C. § 791 *et seq.* He maintains that the FBI denied him reasonable accommodations for his mental disability, created a hostile work environment, and discriminated and retaliated against him through a series of workplace incidents. The Government now moves for partial dismissal on two grounds. First, it argues that some allegations in support of Plaintiff's specific claims are time barred; second, it asserts that the pattern of incidents does not constitute a hostile work environment. Concluding that certain allegations are indeed too late, but that Plaintiff has alleged sufficient facts — if just barely — to state hostile-work-environment claims, the Court will grant in part and deny in part Defendant's Motion.

## I.      Background

The Court, as it must at this stage, draws the facts from the First Amended Complaint. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). Gulakowski is a Management and Program Analyst (MAPA) at the FBI, where he has worked since 1987. See

Am. Compl., ¶ 14.  In 2012, he experienced marital difficulties, began caring for a friend who had suffered a stroke, and struggled with a family member going through anxiety and depression. Id., ¶ 19.  As a result, he likewise started suffering from "major depressive disorder and severe anxiety" — a mental disability — which limited his ability to sleep, concentrate, and communicate.  Id., ¶¶ 20−22.  Still battling his disability in 2017, Gulakowski requested that the FBI accommodate him in the form of "additional time to work on projects and to work at home one day a week."  Id., ¶ 7.  The Bureau denied the request.  Id.  Things only got worse from there.  Over the next 18 months, he was demoted, placed on a disciplinary procedure, pressed to cancel a medical appointment, subjected to "demeaning statements" from his supervisor, and denied a timely promotion and further requests for reasonable accommodations.  Id., ¶¶ 7, 10.

Because of these incidents, Gulakowski filed two formal complaints with an Equal Employment Opportunity counselor — in April 2017 and in March 2018.  Although the allegations underpinning each complaint differ, he principally asserted in both that the FBI had failed to accommodate his disability, created a hostile work environment, discriminated against him based on his disability, and retaliated against him for engaging in protected activity.  Id., ¶¶ 6−7, 9−10.

Plaintiff then filed this suit against the Attorney General, asserting three counts under the Rehabilitation Act.  Count I alleges that Defendant failed to provide reasonable accommodations; Count II claims that it discriminated against and subjected Gulakowski to a hostile work environment because of his disabilities; and Count III alleges that the FBI retaliated against Gulakowski's complaints by discriminating against him and subjecting him to a hostile work environment.  Id., ¶¶ 75−82.

Defendant has now filed a Motion for Partial Dismissal. The Attorney General seeks dismissal of those portions of Counts II and III that relate to the hostile-work-environment claim. See Mot. at 8–10. He also moves for dismissal of those allegations in Counts I, II, and III that are time barred. Id. at 7–8.

## II.     Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails to "state a claim upon which relief can be granted." Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). In weighing a motion to dismiss, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." Equal Emp't Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997). The Court "must treat the complaint's factual allegations as true and must grant [the] plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow, 216 F.3d at 1113 (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)). It need not accept as true, however, "a legal conclusion couched as a factual allegation" or an inference unsupported by the facts set forth in the Complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Even at the Rule 12(b)(6) stage, a court can review "documents attached as exhibits or incorporated by reference in the complaint" or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by

the defendant in a motion to dismiss." Ward v. D.C. Dep't of Youth Rehab. Servs., 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted); see also Banneker Ventures, LLC v. Graham, 798 F.3d 1119, 1133 (D.C. Cir. 2015) ("A district court may consider a document that a complaint specifically references without converting the motion into one for summary judgment."). In this case, Gulakowski did not attach the Record of Investigation (ROI), Record of Consultation (ROC), or Office of Equal Employment Opportunity Affairs (OEEOA) Correspondence Files regarding his EEO complaints to his Amended Complaint. Defendant has included valid excerpts of each with its Motion to Dismiss, see Mot., Exhs. A–C, so the Court may properly consider those undisputed government records, the authenticity of which is not challenged.

## III. Analysis

In considering Defendant's Partial Motion to Dismiss, the Court begins with the hostile-work-environment claims, as pled in Counts II and III. It will then analyze whether the allegations in any counts are untimely.

### A. Hostile Work Environment

The Rehabilitation Act bars the Government from discriminating against its employees with respect to, among other things, their "terms, conditions, or privileges of employment" because of that person's disability. See 29 U.S.C. §§ 794(a), (d) (incorporating standard for discrimination set forth in Americans with Disabilities Act, 42 U.S.C. §12112(a)).

The Supreme Court has read that language broadly, determining that "[t]he phrase 'terms, conditions, or privileges of employment' evinces a congressional 'intent to strike at the entire spectrum of disparate treatment' . . . in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1); then quoting Meritor Savings Bank, FSB v. Vinson,

477 U.S. 57, 64 (1986)).  The D.C. Circuit, in turn, has extended that reasoning in holding that "a hostile work environment can [also] amount to <u>retaliation</u> under the [antidiscrimination laws]." <u>Baird v. Gotbaum</u>, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (emphasis added) (citation omitted); <u>see also</u> <u>Ellis v. Mattis</u>, 2018 WL 6201122, at *5 (D.D.C. Nov. 28, 2018) (assuming Rehabilitation Act permits hostile-work-environment claim based on disability).  Gulakowski pursues both avenues here, alleging that his employer created a hostile work environment because of his disability (Count II) and retaliated against him for both requesting reasonable accommodations and filing an EEO complaint (Count III).  <u>See</u> Am. Compl., ¶¶ 77–82.

To prevail on a hostile-work-environment claim under either theory, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  <u>Baloch v. Kempthorne</u>, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting <u>Harris</u>, 510 U.S. at 21).  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  <u>Id.</u> (citing <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787–88 (1998)).  "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'"  <u>George v. Leavitt</u>, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting <u>Faragher</u>, 524 U.S. at 788).

Many of the incidents Gulakowski claims created a hostile environment are laid out in his EEO complaints, the first of which he filed in April 2017.  <u>See</u> Am. Compl., ¶ 6; Mot., Exh. A (April 2017 ROI) at FBI000041; <u>see also</u> Opp. at 6–7.  The OEEOA ultimately agreed to investigate the following allegations:

1. From February 20, 2017, to the present[,] his requests for an accommodation, to include additional time to work on projects and to work at home one day a week, have been denied;

2. On January 31, 2017, his Unit Chief questioned him about a private conversation [Plaintiff] had with his immediate supervisor;

3. On or about March 31, 2017, he began receiving telephone calls from employees who were saying they heard he was being demoted;

4. On April 5, 2017, he became aware that the [Unit Chief] informed a Supervisory Surveillance Specialist in mid-March 2016 that he was going to demote Plaintiff;

5. On May 11, 2017, he was officially demoted from GS-14 step 8 to GS-12 step 10 and his supervisor made "demeaning statements" throughout the process;

6. On July 12 and 13, 2017, the [Unit Chief] intimidated and harassed both him and one of his potential witnesses [who had participated as a witness in Plaintiff's EEO complaint]; and

7. On August 23, 2017, he learned that he would be permanently reassigned to [redacted] effective September 4, 2017.

Mot., Exh. B (OEEOA Correspondence File) at FBI0000266–67; see also Opp. at 6–7; Am. Compl., ¶¶ 7, 41–49, 58, 60.

About a year later, in March 2018, Gulakowski filed his second EEO complaint. See Am. Compl., ¶ 9; Mot., Exh. C (March 2018 ROC) at FBI000333–36. After several amendments by Gulakowski, the OEEOA agreed to investigate the following allegations:

1. As of November 16, 2017, he was placed on a disciplinary procedure requiring him to email the Unit Chief (UC) of his arrival and departure time to and from work every day;

2. Since December 4, 2017, he has received numerous harassing emails from his UC;

3. On December 17, 2017, he was forced to cancel his doctor's appointment;

4. Since May 14, 2018, he has not received a promotion to a General Schedule (GS) 13 level; and

5. On June 22, 2018, his requests for reasonable accommodation were denied.

March 2018 ROC at FBI000333–36; see also Opp. at 6–7; Am. Compl., ¶¶ 10, 62–67.

The current suit not only incorporates these incidents, but Gulakowski further alleges that his employer created a hostile environment by "downgrad[ing] his duties to primarily maintenance tasks." Opp. at 6 (citing Am. Compl., ¶¶ 68–70). He also points to other times when he was denied reasonable accommodations, see Am. Compl., ¶¶ 58, 60, and assigned projects with unreasonable timelines. Id., ¶¶ 32–37. A number of incidents he cites occurred before February 2017, a date whose relevance will become plain shortly.

Defendant nevertheless asserts that Plaintiff's allegations "are not sufficiently severe or pervasive to state a claim for hostile work environment." Mot. at 10. Affording Gulakowski the benefit of all inferences at this stage, the Court believes that the allegations contained in the Amended Complaint barely clear the high bar required to establish a hostile work environment. He has identified a slew of incidents involving his first- and second-line supervisors and alleged that they denied his repeated accommodation requests, wrongfully demoted him, ignored his request to leave work for a medical appointment, delayed his promotion, downgraded his duties, required him to alert his supervisors whenever he arrived at and before he left work, and intimidated one of his colleagues for serving as a witness in his April 2017 EEO complaint. See Floyd v. Lee, 85 F. Supp. 3d 482, 517–18 (D.D.C. 2015) ("The prolonged denial of a reasonable accommodation can underlie a hostile work environment claim when 'all the circumstances' would support such a claim.") (citation omitted). This is enough for now. To survive summary judgment, however, these allegations must ultimately be supported by record evidence, and

Plaintiff will need to show that his employer was actually motivated by his disability or his engaging in protected activity.

B. Time-Barred Allegations

Next up is Defendant's argument that certain allegations set out in Gulakowski's EEOC complaints are time barred. See Mot. at 7–8. Title 29 of the Code of Federal Regulations describes the administrative process for filing discrimination complaints against the federal government. First, one who believes he has been subject to discrimination by his government employer "must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory . . . ." Id. § 1614.105(a)(1). A court may not consider discrimination claims that arise after 45 days. See Steele v. Schafer, 535 F.3d 689, 693 (D.C. Cir. 2008).

To be sure, courts "distinguish[] between discrete and ongoing discriminatory acts for the purpose of this exhaustion requirement." Gordon v. Napolitano, 786 F. Supp. 2d 82, 84 (D.D.C. 2011). The Supreme Court has explained that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [45]-day time period after the discrete discriminatory act occurred." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). "On the other hand, ongoing discriminatory acts, such as those of hostile work environment, 'are different in kind from discrete acts [because t]heir nature involves repeated conduct.'" Gordon, 786 F. Supp. 2d at 84 (quoting Morgan, 536 U.S. at 115). "For purposes of timeliness, the 'unlawful employment practice' 'cannot be said to occur on any particular day. It occurs over a series of days or

perhaps years . . . .'" Ashraf-Hassan v. Embassy of France, 878 F. Supp. 2d 164, 172 (D.D.C. 2012) (quoting Morgan, 536 U.S. at 115). "It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117.

With that windup, the Court will now assess Gulakowski's EEOC complaints in turn.

### 1. *April 2017 EEO Complaint*

The parties agree that Plaintiff initially contacted an EEO counselor on April 6, 2017, setting forth certain allegations. See Am. Compl., ¶ 5; Mot. at 2; April 2017 EEO complaint at FBI000045. Any discrete discriminatory acts occurring before February 20, 2017 — that is, 45 days before April 6 — would be untimely. More specifically, any allegations surrounding Gulakowski's performance review and placement on a performance-improvement plan, the denial of accommodations, unreasonable work deadlines, and the conversations between Plaintiff and his Unit Chief that occurred before February 20, 2017, are barred as too late. See Am. Compl., ¶¶ 25–41. As such, Defendant argues, these allegations cannot be used to support the discrimination and retaliation claims in Counts I, II, and III. See Reply at 2. The Court agrees, but only to the extent Plaintiff uses these pre-February 20, 2017, allegations as support for "discrete discriminatory acts." Morgan, 536 U.S. at 113. Put differently, these earlier incidents are untimely with respect to Gulakowski's failure-to-accommodate (Count I), disability-discrimination (Count II), and retaliation (Count III) claims. See Gordon, 786 F. Supp. 2d at 85. On the other hand, if Plaintiff relies on some or all of these incidents to support his hostile-work-

environment theories (Counts II and III), they may be considered for those claims, which the Court has now allowed to go forward.  See Ashraf-Hassan, 878 F. Supp. 2d at 171–72.

### 2. *March 2018 EEO Complaint*

As for the second EEO complaint, the parties dispute the date on which Gulakowski "initiated contact" with the EEO Counselor.  Defendant contends that January 4, 2018, sets the 45-day window.  See Reply at 1–2; see also March 2018 ROC at FBI000333–34 (reflecting January 4, 2018, as "Date of Initial Contact").  Plaintiff, on the other hand, maintains that he initiated contact on December 18, 2017, the date on which "his attorney[] contacted the EEO office regarding additional amendments to [his April 2017 Complaint]."  Opp. at 5 (citing Am. Compl., ¶ 8).  About two weeks later, on January 3, 2018, "the EEO office responded that he would have to contact a counselor and start a new EEO complaint."  Id. (citing Am. Compl., ¶ 8). So, on the following day, January 4, Plaintiff alleges that he "contacted an EEO counselor."  Am. Compl., ¶ 9; see Opp. at 3 n.1 ("The correct date is January 4, 2018.").

The operative date is of some consequence.  If Defendant is correct, then any claims deriving from discrete discriminatory acts occurring before November 20, 2017 — that is, 45 days before January 4, 2018 — would be untimely.  By contrast, if Plaintiff is right, then none of the allegations in his second EEO complaint would be time barred as they all allegedly occurred after the corresponding November 3, 2017, cutoff date.  In effect, the parties' disagreement is whether Plaintiff can allege that he was placed on a disciplinary procedure as of November 16, 2017, see Am. Compl., ¶ 10, or as of November 20, 2017.  See Mot. at 5, 9.

To resolve this issue, the Court must address what it means to "initiate contact."  "The EEOC has interpreted 'initiate contact' to require that an employee who believes that she has been the subject of discrimination must timely (1) contact an agency official 'logically

connected' with the EEO process (not necessarily a Counselor) and (2) demonstrate an intent to begin the EEO process." Boone v. Clinton, 675 F. Supp. 2d 137, 143 (D.D.C. 2009) (citation omitted); accord Miller v. Hersman, 594 F.3d 8, 11 n.1 (D.C. Cir. 2010); EEOC Management Directive 110, at ch. 2, § I.A, n.1. Here, Plaintiff alleges that on December 18, 2017, his counsel "contacted the EEO office regarding additional amendments" to his April 2017 complaint. See Am. Compl., ¶ 8. And the EEOC has found that an employee's representative is capable of initiating contact with an EEO counselor. See Complainant v. McHugh, EEOC No. 0120140932, 2014 WL 2804103, at *2 (June 10, 2014); Domingo v. West, EEOC No. 01965901, 1997 WL 377433, at *3 (June 27, 1997). Without the benefit of discovery, however, the Court cannot say whether Plaintiff (via his lawyer) reached out to a Counselor on December 18, intending to begin the EEO process. See Welsh v. Hagler, 83 F. Supp. 3d 212, 220–22 (D.D.C. 2015) (analyzing communications to determine whether they showed requisite intent). At this juncture, and affording Gulakowski the benefit of all factual disputes, the Court determines that the November 16, 2017, allegation survives dismissal.

Finally, given the discussion above, Defendant argues that, at a minimum, incidents that occurred between August 23, 2017, and November 2, 2017, are time barred. See Reply at 2; see also Am. Compl., ¶¶ 56–58. The Court agrees, and such incidents will be dismissed from Gulakowski's failure-to-accommodate (Count I), disability-discrimination (Count II), and retaliation (Count III) claims.

## IV. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendant's Partial Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg

JAMES E. BOASBERG
United States District Judge

Date:  September 18, 2019